IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :

   V.                              :        CRIM. NO. 23-16

VIVEK SAVANI                    :

## SENTENCING MEMORANDUM

For many people, facing a federal Judge for their sentencing stirs feelings of fear and anticipation. But for Vivek Savani, it is the epitome of the ultimate disappointment and embarrassment for him, and his family. When he first came to the United States from his native India, he never imagined he would one day be facing a criminal Judge for his conduct.

Vivek is a family man who has always been obedient to his parents and would never imagine doing anything to bring shame onto them, or his family name. See Presentence Investigation Report ("PSR") at ¶ 52. Brought up to respect his elders and do what is expected of him, this conviction brings not only a permanent black mark on an otherwise stellar record, but it forces Vivek to admit that following family protocol was a mistake. The pressure to be more, do more has led him to become a criminal. Now, he must now face this Court's judgment on top of the contempt he already has for the actions he took part in.

Based on the factors addressed below, Vivek Savani respectfully requests a sentence be imposed that proves to be sufficient, but not greater than

1

necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a)(2). The sentencing hearing in this case is currently scheduled for **November 12, 2024.**

I.       **INTRODUCTION**

The traditional goals of sentencing, as outlined in § 3553(a)(2), are punishment, deterrence, protection of society and rehabilitation. Vivek Savani stands before the Court asking for mercy. Accordingly, it is requested this Honorable Court impose a noncustodial sentence that will allow Vivek Savani to demonstrate his rehabilitation, become a productive member of society with employment and a positive influence on his family, as well as a respected member of his community.

Usually, understandably, life after a conviction is in the forefront of a sentencing Judge's mind. How much is enough time to punish while also considering what a defendant will do with his life after prison? Essentially, how much time is necessary for this person to receive to avoid them recidivating and causing harm the public? Is incarceration necessary? Are there any other options? In this case, the defense points to several significant arguments in support of a non-custodial sentence. (1) Mr. Savani has no criminal history. (2) He is educated and can obtain legitimate employment. (3) Mr. Savani has been on pre-trial supervision with no incidents since his arrest. PSR at ¶ 7. (4) Perhaps, most notably, Mr. Savani is forever marked with a felony conviction. This, in and of itself, for someone like Mr. Savani is sufficient punishment for a mistake he made years ago. This

conviction will be on every application he makes in the future and will forever tarnish an otherwise good man. Therefore, a noncustodial sentence is more than enough to achieve the traditional goals of sentencing in this case. See PSR at ¶ 71.

## II. BACKGROUND OF THE CASE

### A. Facts of the Offense

The facts of this case have been correctly delineated in the United States Presentencing Investigation Report and do not require any additional recounting here.

### B. Procedural History

On January 18, 2023, a federal grand jury sitting in the Middle District of Pennsylvania returned an Indictment in this case charging 12 separate individuals with RICO conspiracy to commit visa fraud, health care fraud and money laundering. PSR at ¶ 1. Vivek Savani was charged only with one count of conspiracy to commit visa fraud in violation of 18 U.S.C. § 371. Id. at ¶¶ 1 and 2. Mr. Savani appeared in front of this Honorable Court on July 26, 2024, and pled guilty to the sole count against him in the Indictment pursuant to a written guilty plea agreement. Id. Sentencing is now pending in this case.

## III. IMPACT OF THE GUIDELINES AND THE PLEA AGREEMENT

The directives of Booker, and § 3553(a), make clear that sentencing courts must give "meaningful consideration to the § 3553(a) factors… A rote

3

statement of the § 3553(a) factors should not suffice if, at sentencing, either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis) and the Court fails to address it." See United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006)(Citations omitted).  See also United States v. Schweitzer, 454 F.3d 197, 205-06 (3d Cir. 2006)(directing district courts to explain all guideline determinations and final sentences, stating, "[t]here is simply no substitute for on-the-record discussion and deliberation.  It ensures that the parties are fully informed of their rights and obligations and that the appellate court will be able to assess the merits of the final judgment,"); United States v. King, 454 F.3d 187, 196-97 (3d Cir. 2006)(District courts "should observe the requirement to state adequate reasons for a sentence on the record so that this court can engage in meaningful appellate review.").

After Booker and the Third Circuit's pronouncement in United States v. Cooper, 437 F.3d 324, 331-32 (3d Cir. 2006), sentencing courts must consider each Section 3553(a) factor fully, without particular weight or preference given to the Sentencing Guidelines, in imposing a sentence that is sufficient, but not greater than necessary, to comply with the traditional goals of sentencing of deterrence, the protection of society, retribution, and rehabilitation, as set forth in Section 3553(a)(2).

In fact, "[a] district court's decision to depart from the Guidelines…will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Koon v. United States, 116

S.Ct. 2035, 2046 (1996). A sentencing court must view the Guidelines as "carving out a heartland, a set of typical cases embodying the conduct that each guideline describes." United States v. Iannone, 184 F.3d 214, 226 (3d Cir. 1999). However, where a defendant's conduct "falls outside the typical heartland, the court may consider a departure from the Guideline sentence" pursuant to U.S.S.G. 5K2.0. Id. Precisely because of the institutional advantage which sentencing courts have over appellate courts in taking measure of a defendant's life in order to fashion an appropriate sentence, departure decisions are only reviewed for abuse of discretion. Koon, 116 S.Ct. at 2047-48.

As another district court judge has observed, "any approach which automatically gives 'heavy' weight to the guideline range comes perilously close to the mandatory regime found to be constitutionally infirm in Booker." United States v. Jaber, 362 F.Supp. 2d 365 (D. Mass. March 16, 2005((Gertner, J.). That is, trial courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guidelines sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3553(e) factors, many of which the guidelines either reject or ignore." United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005)(Adelman, J.). United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb 9, 2005)(advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an

5

appropriate individualized sentence"), *reh'g en banc granted*, 401 F.3d 1007 (9th Cir. 2005).

In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors, and not just the guidelines as set forth in § 3553(a)(4)(A), to determine a sentence that is sufficient, but not greater than necessary, to meet the goals of sentencing. Where the guidelines conflict with other sentencing factors articulated in § 3553(a), these other statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989)(Becker, J., concurring in part, dissenting in part)(arguing that since § 3553(a) requires a sentence to be no greater than necessary to meet those purposes that violated the statute and is reversible even if within the guideline range).

### A. Sentencing Guidelines Calculation

As correctly identified in the PSR, the total offense level in this case is 5 with a Criminal History I yielding a sentencing guideline range 0-6 months. See PSR at ¶¶ 35, 39 and 70. As also correctly stated in the presentence report, since the guideline range is in Zone A, a sentence of imprisonment is not required. Id. at ¶ 70.

### 1. MITIGATING ROLE- MINOR PARTICIPANT § 3B1.2

The United States Sentencing Commission allows for a reduction in the offense level for a mitigation role. The probation report states Mr. Savani is

entitled to a two-level downward reduction for "minor participant" under USSG § 3B1.2(b).  PSR at ¶ 30.

Specifically, § 3B1.2 states:

"Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels."

The Application Notes define who is entitled for the reduction as "[a] defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline." See Application Note 3(a).

The Notes go on to state the role of the Court's consideration in making the determination for the downward adjustment, providing a non-exhaustive list of factors:

> "(i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;

>> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity."

Application Note 3(C).

They further assert, "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." This decision, admittedly, is fact specific. USSG §3B1.2, comment. (n.3(C)). This reduction is directly in line here with the conduct Mr. Savani actually performed in this case. He signed his (and only his) visa documents that allowed him to stay in the United States under false pretense; i.e. falsely stating he was working as a chemist for his cousin's business.

Consequently, Mr. Savani can easily meet his burden by preponderance of the evidence that he is entitled to a mitigating role adjustment.[1] Although "[t]he line between being an organizer or leader, on the one hand, and a

---

[1] See, e.g., United States v. Sanchez, 989 F.3d 523, 545 (7th Cir. 2021); United States v. Nkome, 987 F.3d 1262, 1269 (10th Cir. 2021); United States v. Presendieu, 880 F.3d 1228, 1249 (11th Cir. 2018); United States v. Mathis, 738 F.3d 719, 741 (6th Cir. 2013).

manager or supervisor, on the other, is not always clear…" what is clear here is that Mr. Savani was none of these as she exercised no control over others. United States v. Bahena, 223 F.3d 794, 804 (8th Cir. 2000)(citing United States v. Delpit, 94 F.3d 1134, 1155 (8th Cir. 1996). See also United States v. Chau, 293 F.3d 96, 103 (3d Cir. 2002). The Third Circuit has held the mitigating role adjustment only applies if the defendant shows his or her " 'involvement, knowledge and culpability' were materially less than those of other participants" and not merely that other participants in the scheme may have been more culpable.[2] In other words, a defendant must show he or she "was less culpable than his cohorts." De la Cruz-Gutiérrez, 881 F.3d at 226. The Third Circuit has concluded those same factors can be "highly useful in assessing a defendant's relative culpability," at least "where a great deal is known" about the criminal organization. United States v. Rodriguez, 342 F.3d 296, 299 (3d Cir. 2003).

Although the defense has not lodged a formal objection seeking three or even the four level reduction for minimal participant, it is important to note the facts could clearly support a greater reduction in this case. First, Mr. Savani was only involved in his signing of HB-1 visas that had faulty information. Second, he

---

[2] United States v. Brown, 250 F.3d 811, 819 (3d Cir. 2001) (citing United States v. Headley, 923 F.2d 1079, 1084 (3d Cir.1991), concerning factors for eligibility for "minor participant" status); see also United States v. Nkome, 987 F.3d 1262, 1277 (10th Cir. 2021) ("[A] defendant is not entitled to a reduction under [§]3B1.2 simply because he is the least culpable among several participants in a jointly undertaken criminal enterprise." (citations omitted)); United States v. De la Cruz-Gutiérrez, 881 F.3d 221, 226 (1st Cir. 2018) ("To be entitled to the role reduction, [the defendant] had to prove that he was less culpable than his cohorts. Merely not being more culpable than his cohorts falls short of meeting the standard."); United States v. Gomez-Valle, 828 F.3d 324, 330–31 (5th Cir. 2016) ("Amendment 794 does not provide an affirmative right to a § 3B1.2 reduction to every actor but the criminal mastermind.").

was not the author of the scheme. Third, he invested in the companies involved in the scheme. Fourth, he has no Board position, nor received any financial compensation from them. PSR at ¶ 16. Fifth, he did not hire any workers, nor did recruit any workers for the overall Savani scheme. Id. at ¶ 18. Finally, there is no evidence so show Vivek Savani even knew about this scheme before he entered into the United States initially. Id. at ¶ 16.

All in all, Vivek only signed his own false forms and lied about it but had nothing to do with any other participants of the scheme. The defense acknowledges that even if the Court gave Mr. Savani an additional one to two level reduction it would have no bearing on his guideline range which could remain at 0-6 months in Zone A. The defense merely requests the Court reflect on these facts when fashioning an appropriate sentence in this case.

### 2. ZERO POINT OFFENDER

The probation report has also correctly delineated Mr. Savani's eligibility for another two-level reduction for "zero point offender" status pursuant to § 4C1.1(a)(1)-(10). See PSR at ¶ 34. Mr. Savani meets all of the criteria, which includes:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;
(2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
(3) the defendant did not use violence or credible threats of violence in connection with the offense;
(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

decrease the offense level determined under Chapters Two and Three by 2 levels.

### 3. USSG COMMENTARY FOR NO PRISON TIME

In the new commentary for USSG § 5C1.1., the Sentencing Commission stated a presumption against imprisonment for defendants who both receive a Zero-Point Offender Adjustment and have an applicable guideline range within Zones A or B. The Commentary advises that for these defendants, "a sentence other than a sentence of imprisonment . . . is generally appropriate." Further, the proposed Commentary advises courts to consider a sentence with no prison time even for defendants whose guideline range falls outside of Zone A or B, if the defendant received the Zero-Point Offender Adjustment and the "applicable guideline range overstates the gravity of the offense because the offense of conviction is not a crime of violence or an otherwise serious offense." (Emphasis added.)

####     4.     **ACCEPTANCE OF RESPONSABILITY**

Mr. Savani admitted his guilt at his change of plea hearing and therefore is credited with acceptance of responsibility, which qualifies him under U.S.S.G. § 3E1.1(a) for a two-level decrease in the offense level.  PSR at ¶ 33. (Although Mr. Savani pled guilty in a timely manner and notified authorities of his intention, thereby alleviating the government the time and effort in preparing for trial, his offense level is below 14, he does not qualify for an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b)(2). PSR at ¶ 29. However, the defense requests the Court take this into consideration when determining an appropriate sentence for Mr. Savani.)

### B.     §3553(a) Factors

The primary directive in § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose set forth in paragraph 2."  Section 3553(a)(2) states that such purposes are:

- (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- (B) To afford adequate deterrence to criminal conduct;
- (C) To protect the public from further crimes of the defendant; and
- (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In determining a sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendants," See 18 U.S.C. § 3553(a)(1);

(2) "the kinds of sentences available," see 18 U.SC. § 3553(a)(3);

(3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." See 18 U.S.C. § 3553(a)(6); and

(4) "the need to provide restitution to any victims of the offense." See 18 U.S.C. § 3553(a)(7).

Perhaps most importantly, under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."[3] Therefore, now the Court is free to fashion a sentence that is sufficient, but not greater than necessary, to accomplish the goals of § 3553(a)(2).

---

[3] This statutory language overrides the advisory policy statements in Part H of the Sentencing Guidelines, which lists as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.  See U.S.S.G § 5H1.

13

Under the principles articulated in <u>United States v. Rita</u>, 127 S.Ct. 2456 (2007), this Court may make its own determination as to what factors to consider in addition to the advisory Sentencing Guidelines when sentencing a criminal defendant. The <u>Rita</u> decision held district courts are not required to have to subordinate role to the Sentencing Commission when imposing their sentence. Nor do they have to defer to the Commission's judgments and policy decisions and can reach their own judgments regardless of whether they disagree with the Commission's position. <u>Id</u>. at 2463-64. A sentencing court may, for example, address arguments that the Guidelines "reflect an unsound judgment or…that they do not generally treat certain defendant characteristics in the proper way." <u>Id</u>. at 2468. The <u>Rita</u> Court even stated, "[a]s far as the law is concerned, the [sentencing] judge could disregard the Guidelines" altogether. <u>Id</u>. at 2466.

### 1. 18 U.S.C. § 3553(a)(1)- HISTORY AND CHARACTERISTICS OF THE OFFENDER

Mr. Savani is thirty-seven (37) years old, married and has two young children. PSR at ¶¶ 44, 47 and 48. Mr. Savani's wife has been by his side supporting him since first learning of the Indictment. <u>Id</u>. at ¶ 48. She has attended every court appearance with him to show her support. Researchers have consistently found reentering offenders who obtain steady work and maintain social ties to family are less likely to recidivate. *Reentry and the Ties that Bind: An Examination of Social Ties, Employment, and Recidivism:* Mark T. Berg & Beth M. Huebner, Pages 382-

410 | Published online: 30 Jul 2010. https://doi.org/10.1080/07418825.2010.498383.

### a. Reduced risk of recidivism

Although studies have shown that the risk of recidivism begins to drop after age 40, there are also studies to indicate that first time offenders also have a reduced risk of recidivism. Indeed, this is what prompted the Sentencing Commission to invoke the new Adjustment for Certain Zero-Point Offender under § 4C1.1. The United States Sentencing Commission has found the recidivism rate for defendants with zero criminal history points is lower than other categories. United States Sentencing Guidelines ("USSG") § 4C1.1. The Commission's analysis of recidivism data, however, suggests that offenders with zero criminal history points ("zero-point offenders") have considerably lower recidivism rates than other offenders, including offenders in CHC I with one criminal history point. [Analysis of the Impact of 2023 Criminal History Amendment (Parts A and B) if Made Retroactive (ussc.gov)](), referencing U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), at 5, 27, available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010.[4]

---

[4] The report notes that as a group, offenders with zero criminal history points had a rearrest rate of 26.8 percent. Among offenders with zero criminal history points, approximately half (47.9%) had no prior contact with the criminal justice system. The remaining half (52.1%) of offenders with zero points had either prior arrests that did not result in convictions or convictions that did not qualify for criminal history points, or both. One-fifth (20.3%) of zero-point offenders with no prior contact with the criminal justice system were rearrested during the study period. In comparison, nearly one-third (32.7%) of zero-point offenders with prior contact were rearrested. However, both groups of zero-point offenders were rearrested at lower rates compared to their CHC I counterparts

With regards to the above-mentioned reasons, the defense is seeking a mitigation-based variance from the sentencing guideline range. These, along with the sentencing departures, all should come into play in this Court's decision. <u>United States v. Cora-Alicea</u>, No. 23-1927 (3d Cir. May 6, 2024)[5].

## 2. REMORSE

Mr. Savani has had a lot of time to reflect on his actions. He is truly remorseful for the part his criminal conduct. He has had an otherwise law-abiding life with no signs that he will reoffend.

---

with one criminal history point, 42.3 percent of whom were rearrested during the study period. Id. at 27–28.

[5] Defendant Cora-Alicea requested a mitigation-based variance from the range, arguing that his life history, personal characteristics, and an anticipated change to the Guidelines for people with zero criminal history points justified a variance to approximately 24 months' imprisonment.

The District Court sentenced Cora-Alicea to 45 months on each count, to be served concurrently, followed by a total of three years on supervised release. The court took into consideration his zero-point status but ignored Cora-Alicea's other bases for a variance. Cora-Alicea appealed the District Court's judgment, arguing it procedurally erred at sentencing by dismissing the majority of his personal mitigation evidence offered in support of a variance under 18 U.S.C. § 3553(a) on the ground it was "already taken into account" by the downward adjustments under the Guidelines.

The United States Court of Appeals for the Third Circuit found the District Court had erred in its interpretation of the Guidelines. The Third Circuit noted the safety-valve provision, minor-role, and acceptance-of-responsibility adjustments considered in Cora-Alicea's sentencing had nothing to do with the myriad of mitigating circumstances he raised under § 3553(a). The Third Circuit concluded the District Court's erroneous legal conclusion preempted any weighing of the mitigation evidence against the Guidelines range or the other sentencing factors. As a result, the court vacated Cora-Alicea's sentence and remanded his case to the District Court for resentencing.

16

## IV. OBJECTIONS TO PSR

As of the filing of this Memorandum, the defense has not received the final draft of the PSR. However, the defense has requested the following amendments and corrections be made to the initial report dated October 8, 2024.

(1) On Page 1, it states defense counsel is retained. I was appointed by the court from the Criminal Justice Panel.

(2) On Page 5, Paragraph 3, the offenses occurred beginning in 2013, not March 2012. The visa was revoked in January 2020, thus the conduct did not extend through August 2021.

(3) On Page 8, Paragraph 25, the defense requests the first sentence be amended to add "on the advice of counsel".

(4) Also on Page 8, Paragraph 25 the Footnote 4, the defense requests that the first sentence be corrected without the term "without providing evidence" de deleted. Mr. Savani was not asked to provide any evidence. In addition, it is impossible to prove a negative. He states no one told him about the conspiracy. There is no way for him to prove this.

(5) On Page 11, Paragraph 46, Mr. Savani completed his master's degree in 2014 before coming to the United States.

(6) On Page 11, Paragraph 47, the H1B visa was approved in June/July 2014 so when Mr. Savani got married it had not been more than one year as stated.

(7) On Page 14, Paragraph 63, Mr. Savani's wife is a compliance manager not a pharmacist.

(8) On Page 15, under the monthly expenses section there is a missing item of HOA fee of $ 289.00 per month for their residence. In the financial affidavit, Mr. Savani had listed baby supplies and food separately as a monthly expense of $ 250. This should probably be reflected in the "groceries and supplies" for a total of $ 650, not $400.

(9) On Page 16, Paragraph 66, Mr. Savani and his wife informed their accountant that his wife was no longer a housemaker in 2018. She has paid taxes on her income and has been compliant in paying her taxes. In 2020, when preparing the 2019 taxes, Mr. Savani informed his CPA that he was unemployed and no longer working as a chemist. After viewing this report, Mr. Savani will contact his CPA again to ensure the corrections are made on his tax returns.

The defendant asks these errors be corrected in the final PSR.

## V. CONCLUSION

For all the foregoing reasons, we urge this Court to consider Mr. Savani's apologies for his past behavior, his reduced risk of recidivism, and impose a sentence not greater than necessary that will aid him in continuing his positive path for the future.

Respectfully submitted,

/s/ Carina Laguzzi
CARINA LAGUZZI, ESQ.
Counsel for Vivek Savani

DATED: October 30, 2024

## **CERTIFICATE OF SERVICE**

I certify that on this <u>30th</u> day of October, 2024, I have served a true and correct copy of the above attached Sentencing Memorandum via ECF filing and electronic correspondence thus making them available for downloading and printing upon the following:

| | |
|---|---|
| Lesley Bonney, AUSA<br>lesley.bonney@usdoj.gov | The Honorable Jeffrey L. Schmehl<br>tanya_allender@paed.uscourts.gov |
| Kevin Jayne, AUSA<br>Kevin.Jayne@usdoj.gov | |

/s/ Carina Laguzzi
CARINA LAGUZZI, ESQ.
Counsel for Defendant Vivek Savani